KENNEDY v. DENVER, SOUTH PARK & PACIFIC R'Y Co.

| 10 | 493 |
|----|-----|
| 12 | 395 |
| 10 | 493 |
| 17 | 101 |
| 10 | 493 |
| 6a | 251 |
| 10 | 493 |
| 30 | 36 |
| 10 | 493 |
| f36 | 17 |

1. Plaintiff, being clearly guilty of contributory negligence, cannot recover for an injury received from a moving railroad train, unless wantonness or gross negligence on the part of employees operating the train be established.

2. Where plaintiff himself shows contributory negligence and fails to establish *prima facie* wantonness, judgment of nonsuit may be entered.

*Error to District Court, Jefferson County.*

ON the 27th of January, 1883, plaintiff, George O. Kennedy, while walking in the day-time upon defendant's railroad track, was struck by the locomotive attached to a freight train and seriously injured. The train approached him from behind, and he knew nothing of its presence until struck. He was aware that his hearing was defective, but was not aware of the extent of such defect. In going upon the track at Dawson's switch station, he looked for trains, but made no inquiry concerning them. He had previously passed over the same track, and had always recognized without difficulty the presence of trains before they came in sight. The view was unobstructed for a distance of nine hundred feet back of the

spot where plaintiff was injured. Just prior to the acci-
dent the whistle blew six or seven times, quick, short
blasts, winding up with a long, steady blow. Shortly
afterwards the engine and caboose returned to the station,
bringing plaintiff. The conductor went to one Ruther-
ford, who lived near by, for aid, and remarked that he
had caught that man; promising to send a physician that
evening. The vacuum air-brake was in use on the train,
and the train could have been stopped in a distance of
from one hundred and twenty-five to one hundred and
fifty feet. This action was brought to recover damages
for the injuries thus inflicted.

At the trial the court below rejected the following evi-
dence, offered to be proved by the plaintiff's son, and
also, substantially, by one other witness: That he (the
son) went to the conductor of the train the day of the
injury, and told the conductor that his father, the plaint-
iff, had, five or ten minutes previously, started to walk
along defendant's track to Dome Rock; also that his
father was deaf, or partially so, and that he asked the
conductor, on account of such deafness, to look out for
him, and not run over him; that this was done in the
presence and hearing of the two brakemen of said train
and of one Rutherford; and that the conductor then and
there replied that, if the plaintiff was deaf, he had no
business on the track, and would get killed or run over.
The witness was permitted to state that, after the con-
versation alluded to, the train started up, and the con-
ductor went into the caboose. The following rules of
the defendant company for its employees were received in
evidence: "Rule 37. In cases where there is any room to
doubt as to the safety of proceeding from any cause,
adopt the safe course." "Rule 39. The conductor will
have charge of the train, and of all persons employed
on it, and is responsible for its movements while on the
road, except when his directions conflict with these reg-
ulations, or involve any risk or hazard, in either of which

cases the engineer will be held alike accountable." At the conclusion of plaintiff's evidence defendant moved for a nonsuit, which the court allowed, and to review the final judgment entered thereon the present writ of error was sued out.

Messrs. A. H. DE FRANCE and S. E. BROWNE, for plaintiff in error.

Messrs. TELLER and ORAHOOD, for defendant in error.

PER CURIAM.   The rulings challenged by the first three assignments of error were correct, and the assignments will not be discussed.

Conceding that the testimony concerning notice to the conductor, and the latter's remark, should have been received in evidence, and that the court's action in excluding the same was error, we still think there is not sufficient ground for reversal.   Plaintiff was a man of mature years, of sound mind and perfect eyesight.   He was in the possession of unimpaired physical activity and strength.   His only defect was that of being *partially* deaf.   Of this defect he was aware, though perhaps he did not know its extent.   Without inquiry about defendant's trains, he voluntarily went upon its track, and was walking thereon when the accident occurred.   It was in the day-time, and the road-bed for nine hundred feet behind him was in full view.   Prior to the accident the whistle was blown six or seven times in short, sharp blasts, excepting the last, which was a prolonged blast.   Plaintiff's own evidence clearly establishes contributory negligence on his part.   Therefore, under a well-known legal principle, before he could recover, it became necessary for him to show gross negligence or wantonness on the part of the employees operating the train.   *Railroad Co. v. Holmes*, 5 Colo. 197; *Railroad Co. v. Cranmer*, 4 Colo. 524.   Aside from the fact of the accident itself, and the testimony offered, but excluded, there is nothing in the

case to show that the injury was the result of such negligence or wantonness. We cannot presume that plaintiff would have offered other or further proofs had the rejected testimony been received; and, considering this testimony in connection with the other evidence, it does not appear but that the train was operated with the care required, under all the circumstances. Had the court admitted this testimony, we are of the opinion that a *prima facie* case of gross negligence or wantonness, requiring a submission to the jury, would not have been made.

The judgment is affirmed.

Beck, C. J. (*dissenting*). The plaintiff was guilty of negligence, but he was not as reckless as the court seems to suppose. He went upon defendant's railroad track at Dawson's switch to walk to Dome Rock, without making inquiries at the former point as to the time of the passage of trains. But the reason assigned for this is that he saw no one there to make inquiries of. There was no footway or path between the points mentioned, but wherever the ground alongside the railroad track was smooth enough, which was about one-fourth of the whole distance traveled by him, he would leave the track and walk by the side of it. Every time he went upon the track he looked for trains. He knew his hearing was defective, but he did not know the extent of that defect; having previously walked on the same track, and heard the approach of trains,— how recently he was not permitted to state. At this time, however, his hearing was so bad he did not hear the engineer's whistle, and the consequence was the engine struck and injured him. The foregoing items might be immaterial, in a legal point of view, if the officer in command of the train which run down the plaintiff had not been notified of his defective hearing. In this connection they are material. The complaint charges that the employees of the defendant in charge of the train well knew the plaintiff was walking

on the track in front of the train, going in the same direction, and that he was almost entirely deaf. Upon such a state of facts, I am of opinion that a greater degree of care was due from the men in charge of the train than if no notice of the situation and condition of the plaintiff had come to them. Without such knowledge the six or seven short, sharp blasts of the whistle, ending in a prolonged blast, may have been held to constitute ordinary care, but with this knowledge the engineer had good opportunity to prevent an accident had the same been communicated to him.

Very respectable authorities have held that walking on a railroad track is not negligence *per se*, and that, in case of injury ensuing, the question of negligence as to the act is one proper to go to the jury. *Hassenyer v. Railroad Co.* 48 Mich. 205; 12 N. W. Rep. 155; *Johnson v. Railway Co.* 56 Wis. 274; 14 N. W. Rep. 181; *Carter v. Railroad Co.* 19 S. C. 20; *Gothard v. Railroad Co.* 67 Ala. 114. If this be so in an ordinary case, where the party injured is in possession of all his faculties, the peculiar circumstances of this case, considered in connection with the knowledge possessed by the conductor of the train, would seem to warrant the same legal conclusion.

The trial having been to a jury, the plaintiff was entitled, under the law, to have produced in evidence all facts legally tending to show lack of ordinary care, recklessness, or wilful negligence on the part of the defendant's agents. The refusal of the trial court to admit testimony of this character, offered by the plaintiff, was error, and it is my opinion that the judgment of nonsuit was also error. Aside from abandonment of an action or consent of the plaintiff, the Civil Code permits a nonsuit, on motion of the defendant, only when the plaintiff fails to prove a sufficient case for the jury. Civil Code, p. 48, § 147. I do not say that the testimony introduced and offered made out a clear case for recovery in favor of the plaintiff. Whether he would have been entitled to a

judgment for damages is a close question; but my dissent is based on the proposition that the plaintiff was wrongfully deprived of legitimate testimony offered by him in the first place, and wrongfully deprived of the consideration and judgment of the jury upon his whole case, in the second place. Cases often arise, and this is an example of the class, in which there is room for difference of opinion as to the inferences and conclusions which may be drawn from the existing facts. In such cases it is the province of the jury, and not of the judge, to find the facts, to make the proper inferences, and to deduce the proper conclusions therefrom. This is to be done under instructions from the court as to the principles of law applicable to the case.

It is a general rule that contributory negligence on the part of the plaintiff will defeat an action for injuries caused by the negligence of the defendant; but it is a sound and well-established rule of law that contributory negligence is no bar to an action for a wilful injury. *Kenyon v. Railroad Co.* 5 Hun, 479; *Green v. Railway Co.* 11 Hun, 333, and cases cited. A technical trespass is held not to deprive the trespasser of his rights to recover damages for an injury which he suffers through the wilful negligence of another. Shear. & R. Neg. § 36; Thomp. Neg. § 1162; Whart. Neg. § 344 *et seq.; Isabel v. Railroad Co.* 60 Mo. 475; *Meeks v. Railroad Co.* 56 Cal. 519, and cases cited; *Railroad Co. v. Miller,* 25 Mich. 279; *Railroad Co. v. Neubeur,* 62 Md. 398. Says the author of Beach on Contributory Negligence, section 18: "When one, after discovering that I have carelessly exposed myself to an injury, neglects to use ordinary care to avoid hurting me, and inflicts the injury upon me as the result of his negligence, there is very little room for a claim that such conduct on his part is not wilful negligence." The foregoing principles of law appear to have been ignored in the trial of this case. One of the offers of proof made, and rejected by the

court, was as follows: "The plaintiff then offered to prove by the witness on the stand that on the 27th day of January, A. D. 1883, the day on which the alleged injury occurred, he went to the conductor of the train doing the injury, and told the conductor that his father, the plaintiff, had just started down the railroad track on which said train was then standing, to Dome Rock, about five or ten minutes before the time of his telling the conductor the same, to walk along the track to Dome Rock, the same being defendant's track; that he also told the conductor that his father, the plaintiff, was deaf, or partially so, and asked the conductor to look out for him and not run over him, because he was deaf; that this was done in the presence and hearing of the brakemen of said train and one Edward J. Rutherford, and that the conductor then and there replied 'that, if the plaintiff was deaf, he had no business on the track, and would get killed or run over.'" The testimony shows that the train causing the injury was a freight train, with a caboose attached to the rear end, and that the train was from one hundred and eighty to two hundred feet in length. On starting from Dawson's switch the conductor, without communicating with the engineer, it appears, took his seat in the rear car. The train had gone three thousand four hundred and twenty-six and four-tenths feet, or about five-eighths of a mile, when the engine struck and seriously injured the plaintiff. The indications are that no attention was paid to the notice given the conductor. There was a clear stretch of nine hundred feet in which he could be seen from the train before the engine struck him. The train could have been stopped by the application of the vacuum air-brakes in a distance of from one hundred and twenty-five to one hundred and fifty feet. The facts proved, and offered to be proved, therefore, constitute a chain of circumstances affording room for difference of opinion as to the inferences and conclusions which might be drawn there-

from.  Some of the facts alleged in this case are the sub-
ject of inference from other facts and circumstances
shown or offered to be proven; as, the inference concern-
ing the failure of the conductor to take any precautions
to prevent injuring the plaintiff.  The question of negli-
gence in such a case is not a question of law for the
court, but it is the exclusive province of the jury to con-
sider and weigh the testimony, to find the facts, make
the proper inferences, and to draw the proper conclusions
therefrom.  1 Phil. Ev. 599; *Nelson v. Railway Co.* 60
Wis. 323; 19 N. W. Rep. 52; *Ernst v. Railroad Co.* 35
N. Y. 38; *Railroad Co. v. Stout,* 17 Wall. 657.  The
facts concerning the notice given the conductor at Daw-
son's switch, his words and conduct, should have been
admitted in evidence; and it should have been left to the
jury to determine, under proper instructions from the
court, whether the agents of the defendant exercised
ordinary care, under the circumstances of this case, to
avoid the catastrophe, or whether the injury to the
plaintiff was the result of their wilful negligence.

It is held that an engineer who sees a man walking
upon the track, and is not aware that he is deaf, or in-
sensible of danger from any cause, has a right to presume
that he will get off in time to escape injury.  But this
presumption does not exist in the case of a child of ten-
der years, or of a person known to him to be deaf, or
otherwise insensible of danger.  His duty in the latter
case is to take such precautions as are reasonably neces-
sary to prevent disaster, even to stopping his train.
Whart. Neg. § 389; *Railroad Co. v. Miller,* 25 Mich. 279.
Even a drunken man is said not to be so far beyond the
pale of the law that he may be injured with impunity.
*O'Keefe v. Railroad Co.* 32 Iowa, 467; *Whalen v. Rail-
way Co.* 60 Mo. 323.  This court said, in *Railway Co. v.
Ward,* 4 Colo. 30–34, " Notwithstanding the company's
exclusive right of the use of its roadway, it is still bound
to use ordinary care to avoid injury to persons who may

be upon or near its track. What is ordinary care is to be measured, not only by the dangerous forces put in motion, but by the special circumstances of time and place." In *Railway Co. v. Cranmer*, 4 Colo. 524, it was said: "The plaintiff, even though a trespasser on the track, may recover, if the defendant, with knowledge of his danger, failed to exercise ordinary care to prevent it;" citing the following paragraph from Shear. & R. Neg. § 36: "It is now well settled that a plaintiff may recover, notwithstanding his own negligence exposed him to risk of injury, if the defendant, after becoming aware of the plaintiff's danger, failed to use ordinary care to avoid injuring him." In *Behrens v. Railway Co.* 5 Colo. 400, it was held that a nonsuit was proper when it affirmatively appeared from the plaintiff's evidence that he was guilty of contributory negligence which was the proximate cause of the injury. That this ruling was not intended to excuse a case of wilful negligence is evident from the remark of the court, in commenting upon the case cited: "But the fact that the latter was a trespasser gave the railroad company no license to run its engine over him." In *Railroad Co. v. Martin*, 7 Colo. 592, we recognize the rule that where the conclusion from the evidence is fairly debatable, or rests in doubt, the question of negligence is always for the jury. To warrant the court in instructing the jury that a party is guilty of negligence, a case must be such as to allow no other inference from the evidence; and that, if a question depends upon a state of facts from which different minds may honestly draw different conclusions, the question must be submitted to the jury. That case also recognizes the rule that when the plaintiff so far contributes to the disaster by his own neglect, or want of ordinary care and caution, as that, but for such neglect or want of care and caution on his part, the misfortune would not have happened, he is not entitled to recover. This latter rule is not applicable in a case where the proximate cause of the

injury arises from the wilful neglect of the defendant, or the failure on his part to exercise ordinary care to avoid the accident; reference being had to the circumstances of the case.

Referring, now, to the circumstances of the case before us, the conductor was the officer in charge of the train. His reply to the son of the plaintiff, when informed by the latter that his deaf father had started down the track a few minutes in advance of the train, accompanied by the request not to run over him, considered in connection with his conduct in seating himself in the rear car, without communicating with the engineer, certainly indicated indifference to the fate of the plaintiff. His further remark, made a few minutes later, to the witness Rutherford, on returning with the plaintiff in his mangled condition, "that he had caught that man," was apparently quite as indifferent and heartless. In view of the conduct and speeches of this officer, and of the fact that the plaintiff was run down by his train when it could have been so quickly slowed up or stopped, the jury might have been warranted, in the absence of other and contrary evidence, in drawing the inference that he failed to take any precautions to avoid the disaster. Presumptions of fact are derived directly from the circumstances of the particular case by reasoning from the common experience of mankind; and this process of ascertaining one fact from the existence of another is said to fall exclusively within the province of the jury. 1 Greenl. Ev. §§ 33, 44, 48. The case being left to the jury, it might have rationally inferred from the circumstances mentioned that the injury done the plaintiff was the result of wilful negligence on the part of the defendant.

For the foregoing reasons I am of opinion that the judgment should be reversed and the cause remanded for a new trial.

*Affirmed.*